UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DENNIS WIESEHAN, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL NO.  1:20cv481 |
| | ) |
| FCI US, LLC, a foreign corporation, *et al.*, | ) |
| | ) |
| Defendants. | ) |

OPINION AND ORDER

This matter is before the Court on a motion for judgment on the pleadings filed by Defendant FCA US, LLC ("FCA") on July 29, 2021. Plaintiffs, Dennis and Stephanie Wiesehan, as personal representatives for the estate of Kevin Wiesehan, deceased ("Wiesehan"), and Kent Litchin, as personal representative of the estate of Summer Keesler, deceased ("Keesler"), filed their response August 19, 2021, to which FCA replied on September 2, 2021.

Also before the Court is a motion for judgment on the pleadings filed by Defendant Northern Stamping Co. ("Northern Stamping"), on July 29, 2021. Plaintiffs responded to the motion on August 19, 2021, to which Northern Stamping replied on September 2, 2021.

For the following reasons, FCA's motion will be granted in part and denied in part, and Northern Stamping's motion will be denied.

Rule 12(c) Standard

Under Federal Rule of Civil Procedure 12(c), "after the pleadings are closed . . . any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The pleadings include the complaint, the answer, and any written instruments attached as exhibits." *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend,* 163 F.3d 449, 452 (7th Cir. 1998). Courts review Rule 12(c)

motions under the same standard as Rule 12(b) motions. *Id*. "Therefore, the court must take the facts alleged in the complaint as true and draw all reasonable inferences in favor of the non-moving party, but to survive the motion, the complaint must contain enough facts to state a claim for relief that is plausible on its face." *Hanrahan v. Univ. of Notre Dame*, No. 3:10–CV–00502–JD, 2012 WL 1066773, at *1 (N.D. Ind. Mar. 27, 2012) (internal citation omitted). Affirmative defenses are properly raised under Rule 12(c). *Carr v. Tillery*, 591 F.3d 909, 913 (7th Cir. 2010).

## Discussion

The basic facts in this case, as alleged by Plaintiffs and pertinent to both motions, are as follows. On June 3, 2013, the National Highway Transportation Safety Association ("NHTSA"), pursuant to 49 U.S.C.A. § 30118, completed its investigation into Jeep fires and requested that Defendant FCA voluntarily recall 2.7 million vehicles for a safety defect, including the MY 2002-2007 Jeep Liberty (KJ), explicitly warning FCA that "Chrysler's decision to place the Jeep Grand Cherokee and first-generation Liberty fuel tanks aft of the rear axle contravened industry trends, as well as Chrysler's practices in non-Jeep vehicles…" (1st Am. Compl. Doc. No. 60 at ¶56). Thereafter, FCA agreed to voluntarily recall some of the vehicles that NHTSA had previously requested, including the MY 2002 – 2007 Jeep Liberty (KJ). In its recall, FCA elected to address certain low-speed, rear impact accidents by providing a trailer hitch manufactured by Defendant Northern Stamping as a guard for the rear placed fuel tank. *Id* at ¶60-63. In August 2014, FCA issued its first recall notice to owners of MY 2002 – 2007 Jeep Liberty vehicles. *Id* at ¶67.

On February 17, 2019, decedent Keesler was driving her 2002 Jeep Liberty with her

younger brother, decedent Wiesehan as passenger. (1st Am. Compl. Doc. No. 60 at ¶¶72-73). The 2002 Jeep Liberty operated by Keesler was equipped with a Northern Stamping trailer hitch, the alleged "fix" for the alleged 2002 Jeep Liberty fuel tank location defect. *Id* at ¶71. As the recall only began in 2014, the hitch must have been installed sometime during or after 2014. On February 17, 2019, Keesler and Wiesehan, while occupying Keesler's 2002 Jeep Liberty (KJ), were involved in a rear underride accident, wherein a Ford Explorer struck the Jeep and the trailer hitch, which failed to guard the fuel tank from damage. *Id* at ¶76-79. This resulted in a post-collision fuel-fed fire in which both occupants died. *Id*. at ¶¶81-82. The autopsy of Keesler and Wiesehan performed by the Allen County Coroner concluded that Keesler and Wiesehan survived the impact and perished as a result of the burns from the fire. *Id*. at ¶¶81-82.

    Plaintiffs' First Amended Complaint ("FAC") asserts claims under the Indiana Product Liability Act ("IPLA") and alleges, in Count I, against Defendant FCA, that "Defendant [FCA]'s 2002 Jeep Liberty (KJ) fuel tank location was a defect unreasonably dangerous to users and consumers such as decedents Summer Keesler and Kevin Wiesehan....". (FAC ¶83). Likewise, in Count II, against both Defendant FCA and Defendant Northern Stamping, Plaintiffs allege that Defendant [FCA]'s 2002 Jeep Liberty (KJ) recall trailer hitch was a defect unreasonably dangerous to users and consumers such as decedents Summer Keesler and Kevin Wiesehan....". (FAC ¶96). Count II also alleges that "Defendant [FCA] and Defendant Northern Stamping were negligent in the design, manufacture, marketing and/or distribution of the 2002 Jeep Liberty recall trailer hitch as they designed, manufactured, marketed and/or distributed the 2002 Jeep Liberty recall trailer hitch in a manner that was known to be unsafe and have an unreasonable risk of resulting in the fire deaths of Jeep Liberty occupants...." (FAC ¶99).

In support of their motions for judgment on the pleadings, both Defendants argue that Plaintiffs' cause of action is barred by the applicable statute of repose. In both counts of their First Amended Complaint, Plaintiffs seek recovery under the IPLA which contains the following provision:

> A product liability action must be commenced:
>
> (1)   Within two years after the cause of action accrues; or
>
> (2)   Within ten years after the delivery of the product to the initial user or consumer.
>
> However, if the cause of action accrues at least eight years but less than ten years after that initial delivery, the action may be commenced at any time within the two years after the cause of action accrues.

Ind. Code § 34-20-3-1(b).

Defendants argue that because this action was commenced more than ten years after the 2002 Jeep was first delivered, and there is no exception for subsequent product modification, Plaintiffs' entire cause of action is barred.

Before wading deeper into the parties' IPLA arguments, the Court will first address Plaintiffs' argument that a bankruptcy court agreement precludes FCA from relying on the IPLA's statute of repose.

On April 30, 2009, Chrysler LLC—which would later become known as Old Carco LLC ("Old Carco")—joined 24 of its affiliated entities (collectively, the "Debtors") in filing for bankruptcy protection in the United States Bankruptcy Court for the Southern District of New York. *See In re Old Carco LLC*, No. 09-50002 (Bankr. S.D.N.Y.) (the "Bankruptcy Case").

In connection with the Bankruptcy Case, the Debtors, along with Fiat S.p.A., and New

4

CarCo Acquisition LLC ("New CarCo"), entered into a Master Transaction Agreement ("MTA"). (1st Am. Compl. Doc. No. 60, ¶12). Under the terms of that original agreement, New CarCo purchased substantially all of Debtors' assets and assumed certain of their liabilities as defined in the agreement. *Id*. New CarCo is now known as FCA, a defendant in this action. (*Id* at ¶¶13-14). The "Assumption of Liabilities" provisions of the MTA were thereafter amended on October 29, 2009 (Amendment No. 4), in the following manner:

> 1. Section 2.08(h) of the MTA shall be amended in its entirety to read as follows:
>
> "(h) (i) all Product Liability Claims arising from the sale after the Closing of Products or Inventory manufactured by Sellers or their Subsidiaries in whole or in part prior to the Closing and (ii) <u>all Product Liability Claims arising from the sale on or prior to the Closing of motor vehicles or component parts, in each case manufactured by Sellers or their Subsidiaries and distributed and sold as a Chrysler, Jeep, or Dodge brand vehicle or MOPAR brand part, solely to the extent such Product Liability Claims (A) arise directly from motor vehicle accidents occurring on or after Closing, (B) are not barred by any statute of limitations, (C) are not claims including or related to any alleged exposure to any asbestos-containing material or any other Hazardous Material and (D) do not include any claim for exemplary or punitive damages.</u>" (1st Am. Compl. Doc. No. 60 ¶ 13)(emphasis added.)
>
> The amendment further states:
>
> 3. Except as expressly provided herein, all of the terms and provisions in the MTA are and shall remain in full force and effect, on the terms and subject to the conditions set forth therein. This Amendment does not constitute, directly or by implication, an amendment or waiver of any provision of the MTA, or any other right, remedy, power or privilege of any party to the MTA, except as expressly set forth herein. [Order Approving Amendment No. 4, Doc. No. 63-4, page 7 of 19]

In other words, FCA agreed that it could be sued for product liability claims relating to Chrysler LLC-manufactured products that were first sold after June 10, 2009. Chrysler LLC also conveyed to FCA "all defenses, counterclaims, rights of recovery, rights of setoff and rights of

recoupment, in each case only to the extent primarily related to the Purchased Assets or Assumed Liabilities." (MTA § 2.06(j), Doc. 63-1 at *14). Thus, in addition to claims relating to Chrysler LLC-manufactured products sold after June 10, 2009, FCA also agreed to assume certain claims relating to Chrysler LLC-manufactured products sold before June 10, 2009, provided that the claims (A) arise from post-closing accidents, (B) are not barred by any statute of limitations, (C) are not related to hazardous-material exposure, and (D) do not include any claim for punitive damages.

Plaintiffs argue that this express limitation on claims to be assumed acts as a waiver by FCA of all other defenses to claims once they are assumed. However, Plaintiffs' reading of the MTA is unsupported. By assuming claims, FCA was not agreeing to be liable on any particular claim but was only agreeing to be the proper defendant. Claimants still have their burdens of proof and FCA has all applicable defenses. There is no basis for a reading of Amendment 4 that would expand FCA's potential liability far beyond what was ever faced by Chrysler LLC.

As noted, in further provisions of Amendment No. 4, FCA and Chrysler LLC agreed that the amendment did not constitute a waiver of any right, remedy, power or privilege, except as expressly stated therein, and did not confer any benefit on non-contracting parties:

> 3. Except as expressly provided herein, all of the terms and provisions in the MTA are and shall remain in full force and effect, on the terms and subject to the conditions set forth therein. This Amendment does not constitute, directly or by implication, an amendment or waiver of any provision of the MTA, or any other right, remedy, power or privilege of any party to the MTA, except as expressly set forth herein.
>
> 4. This Amendment shall be binding upon and inure solely to the benefit of the parties hereto and their respective permitted successors and permitted assigns. Subject to the preceding sentence, nothing herein, express or implied, is intended to or shall be deemed to confer upon any other Person any legal or equitable right,

6

benefit or remedy of any nature whatsoever.

(Amendment No. 4 to MTA ¶¶ 3–4, Ex. 4 to Answer, Doc. 63-4).

Plaintiffs contend that, in the MTA, "FCA elected NOT to include statutes of repose as an available limitation for product liability claims arising from products sold prebankruptcy" and, therefore, the IPLA's statute of repose is unavailable to FCA. (DE. 73 at 11). Plaintiffs also contend that: "As FCA is not the manufacturer, designer, seller, or distributor of the 2002 Jeep Liberty in question, its liability and its applicable defenses related to pre-bankruptcy defects are solely as set forth in the [MTA]." *Id*. However, while it is true that the MTA sets forth the extent to which FCA assumed product liability claims for Chrysler LLC- manufactured vehicles, it is not true that the MTA defines the "applicable defenses" thereto.

Plaintiffs misconstrue Amendment No. 4 to the MTA, which merely describes the product liability claims that FCA agreed to assume. By agreeing to assume certain claims, FCA did not admit that the assumed claims were in any way meritorious. The assumption of a claim simply means FCA, not the bankruptcy estate, is the proper party against which the claim can be asserted. Amendment No. 4 imposes conditions that narrow the universe of claims that FCA agreed to assume arising from products sold prior to closing. As noted, to be assumed, such claims (A) must arise from post-closing accidents, (B) must not barred by any statute of limitations, (C) must not be hazardous-material claims, and (D) must not include any claim for punitive damages. In other words, claims that do not meet these conditions do not pass to FCA. Once claims do meet these conditions and are assumed by FCA, nothing in the language of Amendment No. 4 divests FCA of the right to defend the claims with any of the defenses (depending on the jurisdiction and facts of the case) that would have been available to Chrysler

7

LLC, including but not limited to the statute of repose, personal jurisdiction, comparative fault, misuse, modification, assumption of the risk, superseding cause, and others that are not expressly referred to in Amendment No. 4.

In the MTA, Chrysler LLC also conveyed to FCA "all defenses . . . related to the Purchased Assets or Assumed Liabilities." (MTA § 2.06(j), Doc. 63-1 at *14). And Plaintiffs' suggestion that Amendment No. 4 impliedly waived the statute of repose defense is directly contrary to its Paragraph 3, which states that the amendment "does not constitute, directly or by implication," an amendment or waiver of any "right, remedy, power or privilege of any party to the MTA, except as expressly set forth herein." (Amendment No. 4 to MTA ¶ 3, Doc. 63-4). Similarly, Plaintiffs' suggestion that Amendment No. 4 saves them from the statute of repose is contrary to Paragraph 4, which states that "nothing herein, express or implied, is intended to or shall be deemed to confer upon any other Person any . . . benefit or remedy of any nature whatsoever." (*Id*. ¶ 4, Doc. 63-4).

Case law also supports FCA's reliance on the statute of repose. Even for successor liability (and FCA is a mere asset purchaser), it is well-established that a company assuming the liabilities of another is entitled to avail itself of the same defenses available to its predecessor. *Smith Land & Imp. Corp. v. Celotex Corp*., 851 F.2d 86, 91 (3d Cir. 1988). Multiple courts have applied a statute of repose to bar claims against FCA for alleged defects in Chrysler LLC-manufactured vehicles sold prior to Closing*. See, e.g., Pina v. FCA US LLC,* 618 F. App'x 820, 822 (6th Cir. 2015) (applying Indiana statute of repose); *Martinez- Garcia v. FCA US LLC*, No. 1:18-CV-582, 2019 WL 7763842, at *3 (E.D. Tex. May 28, 2019) (applying Texas statute of repose); *Grosskopf v. Chrysler Group LLC*, A-14-CA-801-SS, 2015 WL 6021851, at *8 (W.D.

8

Tex. Oct. 14, 2015) (same).

Additionally, *Kissel v. Rosenbaum*, 579 N.E.2d 1322 (Ind. Ct. App. 1991), explains that a "statute of repose constitutes a substantive definition of rights rather than a procedural limitation provided by a statute of limitation." *Id.* at 1326–27. Because statutes of repose are substantive rather than procedural, present "an absolute bar to plaintiff," and may "divest the court of jurisdiction," the Seventh Circuit has suggested that "statutes of repose, unlike statutes of limitations, may not be waived." *Hinkle v. Henderson,* 85 F.3d 298, 302 (7th Cir. 1996). *But see Perez v. PBI Bank, Inc.*, 69 F. Supp. 3d 906, 911 (N.D. Ind. 2014) (noting that decisions of the Seventh Circuit are not conclusive on the availability of waiver to defeat the effect of a statute of repose). Thus, this Court cannot lightly override the IPLA's statute of repose. In fact, it has been stated that when a repose period expires, "the statute-of-repose defense ripens into a property right entitled to due process protections." *Gill v. Evansville Sheet Metal Works, Inc.*, 970 N.E.2d 633, 637 (Ind. 2012) (citing *In re Individual 35W Bridge Litig.*, 806 N.W.2d 820, 831 & n.8 (Minn. 2011)). Here, there is no reasonable interpretation of the MTA, nor any case law, that would support Plaintiffs' argument that the IPLA's statute of repose is not available to FCA.

Thus, as the MTA does not bar the statute of repose, the Court will now turn to the parties' arguments regarding the application of the statute of repose to the facts of the present case. The purpose of the IPLA's statute of repose is "to place a temporal limit upon liability for a product's defects." *Dague v. Piper Aircraft Corp.*, 418 N.E.2d 207, 210 (Ind. 1981). Just last year, the Indiana Supreme Court interpreted the IPLA's statute of repose on a certified question from Judge Brady of this Court in *Estabrook v. Mazak Corp.*, 140 N.E.3d 830 (Ind. 2020). The case concerned an allegedly defective machine that was indisputably first delivered more than ten

9

year prior to commencement of the plaintiff's action. *Id*. at 832. However, the plaintiff sought to rely on an exception, "according to which rebuilding or reconditioning of a product might create a 'new product,' restarting the statutory clock." *Id*. Accordingly, this Court certified to the Indiana Supreme Court the following question of Indiana law:

> Can the statute of repose codified in Ind. Code § 34-20-3-1(b) be extended by post-sale repair/refurbishment/reconstruction of the product, and if so, what is the appropriate test to be used to determine whether the seller has done sufficient work to trigger the extension?

*Id*. Prior to *Estabrook*, there was no clear precedent on this issue. *Id*. at 833. The *Estabrook* court answered the certified question in the negative, eliminating any need to determine a test for determining what might trigger an extension. *Id*. at 832.

In discussing the IPLA's ten-year statute of repose, the Indiana Supreme Court noted that there is only one express statutory exception, which is for an action accruing at least eight years but fewer than ten years after the product's initial delivery. *Id*. ("The statute is unambiguous. And because this is not an asbestos lawsuit, the statute contains only one exception of note – for an action accruing at least eight but less than ten years after initial delivery."). However, this exception was not applicable to Estabrook's claim because he was injured eleven years after his employer received the product. *Id*. The Indiana Supreme Court declined Estabrook's invitation to read another exception into the statute, "both because the statute's plain meaning does not permit it and because the task is not susceptible of a clear, bright-line legal rule." *I*d. 833–34

> Reading the statute's plain language, the Indiana Supreme Court noted that the statute:
>
> does not mention repair, refurbishment, reconstruction, or any comparable term that would authorize restarting the limitations clock when a manufacturer's subsequent, post-delivery actions have purportedly transformed the product initially delivered.

10

*Id*. at 834. "Given these textual constraints," the Indiana Supreme Court declined to interpret the IPLA's statute of repose to include an "exception for product modifications that the legislature could have enacted but did not." *Id*. The Court also noted "the thorny issue of line drawing." *Id*. That is, the Court wondered, if it were to go beyond the plain language of the statue and "craft a 'new-product' exception, what might it say?" For these reasons, the Indiana Supreme Court held:

> Because the statute has no other exceptions, we conclude its ten-year limitation period cannot be extended for any other reason – including a manufacturer's post-sale repair, refurbishment, or reconstruction of a product.

*Id*. at 831–32.

Thus, the Defendants argue that the IPLA's statute of repose, as interpreted by the Indiana Supreme Court in *Estabrook*, bars both Counts of Plaintiffs' First Amended Complaint as to both Defendants. It is undisputed that this purported action under the IPLA, initiated with an original Complaint filed in December 2020 then amended in July 2021, was not commenced within ten years after the delivery of the subject 2002 Jeep Liberty to its initial user in April 2002. (Compl.,Doc No. 1; 1st Am. Compl., Doc. No.60 ¶ 71; FCA US Answer, Doc. 63 ¶ 71).

Plaintiffs strenuously argue that *Estabrook* does not bar their Count II claims[1], as these claims are limited to the trailer hitch. Plaintiffs contend that the trailer hitch is a separate and distinct product delivered, at the earliest, in 2014. Plaintiffs argue that the trailer hitch is not merely "a manufacturer's post-delivery repair, refurbishment, or reconstruction of the disputed product", but an entirely separate product. Plaintiffs liken the trailer hitch to tires, arguing that if

---

[1] Count I, against FCA only, in which Plaintiffs allege that the rear-placement design of the vehicle's fuel tank rendered the vehicle defective, obviously fails because this 2020 action was brought well beyond ten years after the 2002 vehicle's initial delivery. Thus, FCA's motion will be granted as to Count I.

new, but defective, tires were put on an old vehicle and caused an accident, a product liability action would not be barred against the tire manufacturer. This is true. However an action would be barred against the manufacturer of the car itself, if the statute of repose had run, and the car manufacturer was not involved in the design or manufacture of the tire. The trailer hitch, in this instance, was clearly a modification of the Jeep at issue. It is undisputed that the trailer hitch was placed on the Jeep expressly due to a recall, in an attempt to fix an issue with the position of the fuel tank[2]. If the Jeep had not needed to be recalled and modified, the manufacturer would have never installed the trailer hitch.

Plaintiffs' contention that adding the trailer hitch to the Jeep restarted the Jeep's statute of repose, fundamentally contradicts the *Estabrook* decision. As explained above, *Estabrook* held that the IPLA's statute of repose period cannot be restarted when a manufacturer makes post-delivery modifications to a product, including repair, refurbishment, reconstruction, "or any comparable term." 140 N.E.3d at 834.[3] Thus,, claims against FCA, with respect to the Jeep itself, are clearly barred by the statute of repose.

Next, the Court will address the remaining issue, whether the statute of repose bars Plaintiffs' claims with respect to the trailer hitch itself. Plaintiffs argue that the trailer hitch is a distinct product with its own statute of repose, which could not have started to run prior to 2014.

---

[2] The First Amended Complaint (FAC) alleges that the trailer hitch was defective because it was an insufficient "collision guard" for the design of the vehicle's fuel system. *See* FAC (DE 60) at paragraphs 60, 79, 93, 99.

[3] Moreover, if Plaintiffs' analysis were adopted, manufacturers would be incentivized not to repair older products. If a plaintiff could evade the IPLA's repose limitation simply by alleging that a new component was an inadequate repair, refurbishment, or reconstruction, then the statute of repose's purpose "to place a temporal limit upon liability for a product's [alleged] defects" would be defeated. *Johnson v. Kemple Indus., Inc.*, 677 N.E.2d 531, 536 (Ind. Ct. App. 1997).

Defendants argue that Plaintiffs' position is contrary to the First Amended Complaint, which fails to allege how the trailer hitch "independently and separately" caused the fire. However, the First Amended Complaint clearly alleges that both Defendants were negligent in the "design, manufacture, marketing and/or distribution of the 2002 Jeep Liberty recall trailer hitch".[4] (FAC ¶99). The First Amended Complaint also alleges that "[t]he tow package/trailer hitch. . . made the danger created by the Jeep's rear tank location even worse because in a rear impact the trailer hitch can be driven forward into the gas tank like a spear.  That obvious and dangerous fact was well known to FCA."  (FAC ¶63).  This pleading is sufficient and not contrary to Plaintiffs' arguments.

Defendants also rely on *Estabrook*, noting that the Indiana Supreme Court did not hold that each new part/product that was installed on the machine at issue in that case were subject to their own separate statutes of repose.  However, this was not the question that was certified to the Indiana Supreme Court.  Moreover, in *Estabrook*, the plaintiff only brought an action against the manufacturer of the machine at issue, not against the manufacturer(s) of the new parts that were installed as part of the fix.  Thus, as *Estabrook* did not address the issue of whether the new parts installed on the machine were distinct products with their own statute of repose, the case is not controlling as to the present issue.

Clearly, the trailer hitch is a distinct product.  It was manufactured in 2013-14, well after the statute of repose had run on the Jeep at issue.  It was manufactured by a separate entity, which

---

[4] It is unclear from the FAC just how much input FCA had in designing the trailer hitch, although Plaintiffs assert in their briefs that the trailer hitch was manufactured per FCA specifications.  However, as this is a motion for judgment on the pleadings, the Court finds that Plaintiffs have sufficiently alleged a product liability claim against both Defendants with respect to the hitch.

is a defendant in this case. The trailer hitch also allegedly played a distinct role in the accident, allegedly puncturing the fuel tank "like a spear". Thus, this Court finds that the trailer hitch has its own statute of repose, which would not run until at least 2024. Therefore, Plaintiffs' First Amended Complaint is not barred with respect to either Defendant, as to the trailer hitch product liability claims. Accordingly, Northern Stamping's motion for judgment on the pleadings will be denied, and FCA's motion for judgment on the pleadings will be granted in part and denied in part.

## Conclusion

On the basis of the foregoing, FCA's motion for judgment on the pleadings [DE 64] is hereby GRANTED IN PART AND DENIED IN PART. Specifically, the motion is GRANTED with respect to Count I of the First Amended Complaint, because the IPLA statute of repose bars Plaintiffs' claims with respect to the issues regarding the fuel tank on the 2002 Jeep Liberty at issue; FCA's motion is DENIED as to Count II of the First Amended Complaint, because the IPLA statute of repose does not bar Plaintiffs' claims with respect to the allegations pertaining to the trailer hitch.

Further, Northern Stamping's motion for judgment on the pleadings [DE 67] is hereby DENIED in its entirety.

Entered: September 27, 2021.

                                                    s/ William C. Lee  
                                                    William C. Lee, Judge  
                                                    United States District Court